IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Leo Guy, Ryan Tanner, Magaly Granados, Kerry Lamons, Tammy Rano, Vicki Will, and Jennifer White, individually and on behalf all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>CONVERGENT OUTSOURCING, INC.,<br><br>  Defendant. | Case No. 2:22-cv-01558-MJP |

**SUPPLEMENTAL DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM**

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3. I am a Senior Vice President of Epiq Class Action and Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. Hilsoft Notifications is a business unit of Epiq. References to Epiq in this declaration include Hilsoft Notifications.

4. The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq.

**OVERVIEW**

5. This declaration provides updated settlement administration statistics following the successful implementation of the Settlement Notice Program ("Notice Program") and notices (the "Class Notice" or "Class Notices") for *Guy et al. v. Convergent Outsourcing Inc.*, Case No. 2:22-cv-

01558-MJP, currently pending in the United States District Court for the Western District of Washington. I previously executed my *Declaration of Cameron R. Azari, Esq. Regarding Notice Program* on October 30, 2023, which described the Notice Program, detailed Hilsoft's class action notice experience, and attached Hilsoft's *curriculum vitae*. Subsequently, I executed my *Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Program* ("Implementation Declaration") on June 18, 2024, which described the successful implementation of the Notice Program and provided settlement administration statistics.

## NOTICE PROGRAM SUMMARY

6. As detailed in my Implementation Declaration, the Notice Program's individual notice efforts reached approximately 96.3% of the identified Settlement Class. The reach was further enhanced by a Settlement Website. In my experience, the reach of the Notice Program was consistent with other court-approved notice programs, was the best notice practicable under the circumstances of this case, and satisfied the requirements of due process, including its "desire to actually inform" requirement.[1]

## NOTICE PROGRAM

### *Individual Notice*

7. As detailed in my Implementation Declaration, Epiq received data with 652,971 records for identified Settlement Class Members. The data included the names and physical address information of the identified Settlement Class Members. Epiq deduplicated and rolled-up the records and loaded the unique, identified Settlement Class Member records into its database. These efforts resulted in 652,942 unique, identified Settlement Class Member records, which were all sent a Postcard Notice via United States Postal Service ("USPS") first-class mail.

### *Individual Notice – Direct Mail*

8. As detailed in my Implementation Declaration, commencing on March 15, 2024, Epiq

---

[1] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

sent 652,942 Postcard Notices to identified Settlement Class Members with an associated physical address. The Postcard Notices were sent via USPS first class mail.

9. The return address on the Postcard Notices is a post office box that Epiq maintains for this case. The USPS automatically forwarded Postcard Notices with an available forwarding address order that had not expired ("Postal Forwards"). Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired, but is still within the time period in which the USPS returns the piece with the address indicated), or to better addresses that were found using a third-party address lookup service. Upon successfully locating better addresses, Postcard Notices were promptly remailed. As of July 12, 2024, Epiq has remailed 23,868 Postcard Notices.

10. Additionally, a Long Form Notice and Claim Form ("Claim Package") was mailed to all persons who requested one via the toll-free telephone number or other means. As of July 12, 2024, Epiq mailed 2,121 Claim Packages as a result of such requests.

### Notice Results

11. As of July 12, 2024, a Postcard Notice was delivered to 629,039 of the 652,942 unique, identified Settlement Class Members. This means the individual notice efforts reached approximately 96.3% of the identified Settlement Class Members.

### Settlement Website

12. The Settlement Website (www.ConvergentDataBreachSettlement.com) continues to be available 24 hours per day, 7 days per week. Relevant documents and other case-related documents are posted on the Settlement Website, including relevant dates, answers to frequently asked questions ("FAQs"), contact information for the Claims Administrator, and how to obtain other case-related information. The Settlement Website also provided the ability for Settlement Class Members to file an online Claim Form prior to the filing deadline. As of July 12, 2024, there have been 56,515 unique visitor sessions to the Settlement Website, and 144,866 web pages have been presented.

### Toll-Free Telephone Number and Other Contact Information

13. The toll-free telephone number (1-877-564-1209) continues to be available for this case.

Callers are able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Long Form Notice be mailed to them. The automated phone system is available 24 hours per day, 7 days per week. As of July 12, 2024, there have been 9,589 calls to the toll-free telephone number, representing 23,846 minutes of use.

14. A postal mailing address was established and continues to be available, providing Settlement Class Members with the opportunity to request additional information or ask questions.

### *Requests for Exclusion*

15. The deadline to request exclusion from the case was May 20, 2024. As of July 12, 2024, Epiq has received 77 requests for exclusion. Of the 77 opt outs received, 63 are from identified Settlement Class Members and 14 are from non-Settlement Class Members. Of the 63 requests for exclusion received from identified Settlement Class Members, 4 opt outs are duplicate submissions, 1 opt out was submitted after the deadline, and 3 opt outs are pending additional review as the Settlement Class Members' intent to opt out is unclear. As a result, Epiq has received 55 unique, valid requests for exclusion. The Exclusion Report as previously provided to the Court as an attachment to my Implementation Declaration is included as **Attachment 1**.

### *Claim Submission & Distribution Options*

16. The deadline for Settlement Class Members to file a Claim Form was June 19, 2024. As of July 12, 2024, Epiq has received 16,139 Claim Forms (15,844 online and 295 paper) from Settlement Class Members.

17. Epiq has reviewed all Claim Forms received to date with Documented Ordinary Loss and/or Documented Extraordinary Loss benefit elections. Many of these claims were submitted for amounts well above the $10,000 Documented Extraordinary Loss cap or the $1,500 Documented Ordinary Loss cap. In our experience this is not unusual for similar settlements.

18. Some Claim Forms were submitted with insufficient or no documentation. Again, in our experience this is not unusual for similar settlements. As of July 12, 2024, it appears all timely Claim Forms have been received. Approximately 401 Settlement Class Members submitted an incomplete Claim Form. Epiq is in the process of preparing to send a Defect Letter to these Settlement Class Members, which will allow 21 days to cure these deficiencies from the date the Defect Letters are sent.

19. The following table provides additional details regarding the total number of timely Claim Forms received by Settlement Class Members who were matched to the original Class List.

| Claim Detail[2] | Claim Count[3] | Value Claimed[4] | Value Substantiated[5] |
|---|---|---|---|
| Alternative Cash Payment | 15,060 | --- | $1,074,885.94[6] ($71.37 per eligible claim)[7] |
| Attested Time Spent[8] | 911 | $226,470.00 | $226,470.00 |
| Documented Ordinary Losses[9] | 233 | $1,596,594.55 | $2,655.02 |
| Documented Extraordinary Losses[10] | 165 | $2,221,785.17 | $0.00 |

20. The figures in the table above are preliminary. The claim counts, value claimed, and the value substantiated may change after any remaining timely postmarked Claim Forms have been received and processed and as incomplete Claim Forms go through the defect process.

21. Based on Epiq's initial review of the Claim Forms received to date with Documented

---

[2] These statistics only consist of timely Claim Forms submitted by Settlement Class Members found in the original Class List.

[3] Settlement Class Members were able to submit a Claim Form for one or more of the Settlement remedies *or* an Alternative Cash Payment. These stats indicate the number of Claim Forms received and processed to date, are still undergoing final review.

[4] The figures above for "value claimed" include timely Claim Forms submitted by Settlement Class Members found in the originated Class List, and represent the total amount collectively claimed on those Claim Forms prior to any review of the Claim Form to assess compliance with the Settlement Agreement caps and documentation requirements.

[5] The substantiated values only include timely Claim Forms submitted by Settlement Class Members found in the original Class List.

This is the current estimated amount remaining for Alternative Cash Payments after deducting the requested Attorney's Fees and Costs and Service Awards, administrative costs, and the value of the substantiated Ordinary and Extraordinary Loss claims received to date. Since incomplete Claim Forms have not gone through the defect process, it is anticipated the estimated payment amount provided will likely change before disbursement.

[7] The total amount available for pro rata payments is $1,074,885.98 to be paid to the 15,060 Settlement Class Members, equaling $71.37357, which will be paid out as $71.37 per Settlement Class Member.

[8] Settlement Class Members were able to submit a Claim Form for up to 10 hours of lost time at a rate of $30 per hour for time spent remedying issues related to the Data Incident, per the Settlement Agreement.

[9] Settlement Class Members were able to submit a Claim Form for Ordinary Losses for up to $1,500, per the Settlement Agreement.

[10] Settlement Class Members were able to submit a Claim Form for Extraordinary Losses for up to $10,000 per the Settlement Agreement.

Ordinary Loss and/or Documented Extraordinary Loss benefit elections, Epiq anticipates that funds will be available to make an Alternative Cash Payment to Settlement Class Members who submitted a timely claim electing this benefit. At this time, the estimated Alternative Cash Payment is currently $71.37 per Settlement Class Member. Since Claim Forms are still being received and incomplete Claim Forms have not gone through the defect process, it is anticipated the estimated payment amount provided will likely change before disbursement.

22. As standard practice, Epiq is in the process of conducting a complete review and audit of all Claim Forms received. There is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms.

## CONCLUSION

23. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. This framework directs that the notice program be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All of these requirements were met in this case.

24. The Notice Program included an extensive individual notice effort to the identified Settlement Class Members. With the address updating protocols that were used, the Notice Program individual notice efforts reached approximately 96.3% of the identified Settlement Class Members sent notice. The reach was further enhanced by a Settlement Website.

25. The Notice Program in this case provided the best notice practicable under the circumstances, conformed to all aspects of Federal Rule of Civil Procedure 23 regarding notice, comported with the guidance for effective notice articulated in the Manual for Complex Litigation, Fourth, and exceeded the requirements of due process, including its "desire to actually inform" requirement.

26. The Notice Program schedule afforded enough time to provide full and proper notice to Settlement Class Members before the Opt-Out Deadline and the Objection Deadline.

I declare under penalty of perjury that the foregoing is true and correct. Executed July 12, 2024.

                                                                             _____
                                                                             Cameron R. Azari, Esq.

# Attachment 1



## Exclusion Report
*Guy et al. v. Convergent Outsourcing Inc.*

| Number | First Name | Last Name |
|---|---|---|
| 1 | CYNTHIA | ABATI |
| 2 | BERTHA | BALESTRA |
| 3 | GENOVEVA | BACULI |
| 4 | DONNA | BIDLACK |
| 5 | LISA | BROADWATER |
| 6 | DAVID | CHAMBERS |
| 7 | ESTHER | COPLEN |
| 8 | BOBBY | BROOKS |
| 9 | LINDA | CHINSKI |
| 10 | FAKHRUL | CHOWDHURY |
| 11 | CHARLOTTE | CONNOR |
| 12 | DEBORAH | CUNNINGHAM |
| 13 | RICARDO | GARCIA SANCHEZ |
| 14 | SANDRA | GOODRICH |
| 15 | LACRETIA | GREGG |
| 16 | CHARLENE | FRANKLIN |
| 17 | EARL | GANDY |
| 18 | ROBERTO | GUILLEN |
| 19 | CYNTHIA | HILL |
| 20 | DAVID | HORGESHIMER |
| 21 | BARBARA | HUGHES |
| 22 | MICHAL | JACHURA |
| 23 | REGINA | HARRIS |
| 24 | ROGER | HEIN |
| 25 | CARROL | HODGE |
| 26 | JAKE | JOHNSTON |
| 27 | THERESA | LAFRENIERE |
| 28 | LAVETTA | LEWIS |
| 29 | ELAINE | LOUTHAN |
| 30 | BETTY | MAR |
| 31 | MALINDA | MATTHEWS |
| 32 | JENNIFER | MCDONALD |
| 33 | DANIELLE | MCMICKIN |
| 34 | RUTH | NJUGUNA |
| 35 | RAYMOND | PERREAULT |
| 36 | JAMEY | PETERSEN |
| 37 | ANGELA | PITTS |
| 38 | LANCE | PRICE |
| 39 | LORETTA | PHELPS |



**Exclusion Report**
*Guy et al. v. Convergent Outsourcing Inc.*

| Number | First Name | Last Name |
|---|---|---|
| 40 | NARCISO | REPOLLO |
| 41 | COREY | REYNOLDS |
| 42 | STEPHEN | RICHARDS |
| 43 | CATHERINE | RICHARDSON |
| 44 | JAMES | SCHELKE |
| 45 | KATHY | RITENHOUR |
| 46 | LATASHA | ROGERS |
| 47 | GUMESINDO | SALGADO |
| 48 | TERESA | SALM |
| 49 | PATRICIA | SIFUENTES |
| 50 | ADRIENNE | TRIPP |
| 51 | BEN | SAWBRIDGE |
| 52 | PAULA | TURNER |
| 53 | STEVEN | WILLIAMS |
| 54 | KIRSTEN | RUBIO |
| 55 | MORGAN | WILSON |